[No. 5216-1. Division One. April 23, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. WALTER
LEE STERLING, *Appellant*.

*Jack J. Ackerman,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Phillip Y. Killien, Deputy,* for respondent.

CALLOW, C.J.—The defendant, Walter Lee Sterling, also known as Maurice Rice, was charged with two counts of delivering lysergic acid diethylamide (LSD) and one count of possessing amphetamine, all in violation of the Uniform Controlled Substances Act. A jury found the defendant guilty of all counts and the court set sentencing for August 16, 1972. The defendant failed to appear for sentencing and a bench warrant was issued on August 18, 1972, for his arrest.

In May of 1974, the defendant was arrested in California and imprisoned there on a 1969 parole violation. A teletype message was sent from California to the sheriff's office in Seattle on July 1, 1974. This message, referring to Walter Lee Sterling, read in part: "SUBJ NOW IN OUR CUSTODY TO COMPLETE STATE PRISON TERM. DO YOU WISH TO PLACE YOUR HOLD? SUBJ WANTS TO MAKE A DEMAND FOR TRIAL ON YOUR CHARGE." The return message to the California authorities merely noted that the matter had been turned over to a deputy prosecutor "FOR EXTRADITION CONSIDERATION. HE WILL REPLY BY MAIL." The record is silent as to whether any

action was taken by the deputy prosecutor or by the defendant relative to extradition and sentencing.

The defendant was placed on parole by the California authorities in April of 1975, and he was discharged in June of 1976. On August 25, 1976, the defendant was arrested in Washington under the 1972 bench warrant; he was booked into the King County jail. Appointed counsel moved to dismiss the charges on September 21, 1976. On October 13, 1976, the court denied the motion to dismiss, requested the preparation of a presentence report, and set a date for sentencing. On November 16, 1976, the defendant was sentenced to 5 years' imprisonment on each of the three counts, the sentences to run concurrently.

The defendant now appeals from the denial of his motion to dismiss.

The issues raised by this appeal are: (1) Is sentencing a part of the trial for purposes of the Sixth Amendment speedy trial rule? (2) Was there a violation of the defendant's rights?

In *Klopfer v. North Carolina*, 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988 (1967), it was held that the Sixth Amendment right to a speedy trial applied to the states under the due process clause of the Fourteenth Amendment. This right is also guaranteed by article 1, section 22 of the Washington State Constitution. Where the right to a speedy trial has been found to exist, it has been held as a necessary corollary that the affirmative burden is on the state, not on the defendant, to see that a trial is held with reasonable dispatch. *Dickey v. Florida*, 398 U.S. 30, 26 L. Ed. 2d 26, 90 S. Ct. 1564 (1970); *State v. Breaux*, 20 Wn. App. 41, 44, 578 P.2d 888 (1978). This duty includes the requirement that the State make a timely demand for extradition if the accused is being held in another jurisdiction. *See, e.g., Chauncey v. Second Judicial Dist. Ct.*, 474 F.2d 1238 (9th Cir. 1973); *cf. State v. Hattori*, 19 Wn. App. 74, 77, 573 P.2d 829 (1978). The parameters of the State's constitutional obligation to extradite for trial are defined and determined by the same considerations involved in

ascertaining whether the defendant has been denied a speedy trial. However, it should be recognized that in those cases where the duty to extradite has been found or assumed to exist, the facts typically involved pending *charges* in the first jurisdiction against an *accused* defendant. *See, e.g., Moore v. Arizona,* 414 U.S. 25, 38 L. Ed. 2d 183, 94 S. Ct. 188 (1973); *Dickey v. Florida, supra; Smith v. Hooey,* 393 U.S. 374, 21 L. Ed. 2d 607, 89 S. Ct. 575 (1969); *United States v. McConahy,* 505 F.2d 770 (7th Cir. 1974); *Chauncey v. Second Judicial Dist. Ct., supra.* But see *Brooks v. United States,* 423 F.2d 1149 (8th Cir.), *cert. denied,* 400 U.S. 872, 27 L. Ed. 2d 111, 91 S. Ct. 109 (1970). The issue therefore becomes whether the right to a speedy trial attaches to the sentencing phase of a trial, thereby necessitating reasonable efforts by the State to extradite the convicted defendant.

■ In *Pollard v. United States,* 352 U.S. 354, 361, 1 L. Ed. 2d 393, 77 S. Ct. 481 (1957), it was assumed that sentencing is a part of the trial process for purposes of the Sixth Amendment speedy trial rule. The *Pollard* court found no constitutional infringement because there was no evidence of "purposeful or oppressive" delay on the State's part and because the sentencing error was promptly remedied upon its discovery.[1] *See also United States v. Reese,* 568 F.2d 1246 (6th Cir. 1977); *United States v. Campbell* 531 F.2d 1333, 1335 (5th Cir. 1976), *cert. denied,* 434 U.S. 851, 54 L. Ed. 2d 120, 98 S. Ct. 164 (1977); *Brady v. Superintendent,* 443 F.2d 1307, 1310 (4th Cir. 1971); *Brooks v. United States, supra* at 1151; *Whaley v. United States,* 394 F.2d 399, 401 (10th Cir. 1968); *United States v. Tortorello,* 391 F.2d 587 (2d Cir. 1968); *Erbe v. State,* 25 Md. App. 375, 336 A.2d 129, 133–34 (1975), *aff'd,* 276 Md. 541, 350 A.2d 640 (1976).

---

[1]The defendant points to the requirement in CrR 7.1 that sentencing be imposed without "unreasonable delay" and argues that the comments to the rule (Criminal Rules Task Force to the Washington Judicial Council, *Washington Proposed Rules of Criminal Procedure* (1971)) indicate that sentencing is a part of the trial for purposes of the speedy trial requirement.

We conclude that under the circumstances here there does not exist a delay of sufficient length, caused by the State, between trial and sentence to amount to a violation of the Sixth Amendment right to a speedy trial. As stated in *United States v. Ewell*, 383 U.S. 116, 120, 15 L. Ed. 2d 627, 86 S. Ct. 773 (1966), the interests to be protected by the speedy trial rule are:

[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself.

*See also Barker v. Wingo*, 407 U.S. 514, 532, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972); *Smith v. Hooey, supra* at 378. However, the interests enumerated do not remain paramount when criminal proceedings have reached the sentencing stage. As observed in *Barker v. Wingo, supra* at 532, referring to the *United States v. Ewell* criteria:

Of these [interests], the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Thus, once the guilt of a defendant has been determined, it is appropriate to apply a standard of reasonableness to the timeliness of sentencing rather than the standards that have evolved under the speedy trial rule.[2] The convicted defendant may be anxious, but it is no longer an anxiety resulting from public accusation, but apprehension of punishment. *See Brooks v. United States, supra* at 1152–53;

---

[2] In the comment to CrR 7.1, the Criminal Rules Task Force identified Rule 32(a)(1) of the Federal Rules of Criminal Procedure as the basis for CrR 7.1. *See* footnote 1. A delay under the federal rule is not unreasonable unless it was "purposeful or oppressive," *Welsh v. United States*, 348 F.2d 885, 886–87 (6th Cir. 1965). *See also State v. Sims*, 14 Wn. App. 277, 539 P.2d 863 (1975); *State v. Lammert*, 14 Wn. App. 137, 540 P.2d 466 (1975). Inadvertence on the State's part is not a sufficient basis for vacating a sentence. *Pollard v. United States*, 352 U.S. 354, 360, 1 L. Ed. 2d 393, 77 S. Ct. 481 (1957). *See also Erbe v. State*, 276 Md. 541, 350 A.2d 640, 653–54 (1976). For an application of CrR 7.1 to facts similar to those presented here, *see State v. Kelly*, 20 Wn. App. 705, 708–10, 582 P.2d 891 (1978).

*United States v. James,* 459 F.2d 443, 444 (5th Cir.), *cert. denied,* 409 U.S. 872, 34 L. Ed. 2d 123, 93 S. Ct. 202 (1972).

██ The defendant asserts that his rights were violated. We hold that the delay in the sentencing of the defendant was not a violation of his right to a speedy trial, but we will examine his claim as if it were. *Barker v. Wingo, supra,* adopted a balancing test to evaluate whether the right of a defendant has been violated wherein the conduct of both the prosecution and the defendant are weighed. As therein stated: "[L]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" are but "some factors which courts should assess." *Barker v. Wingo, supra* at 530. The trial court's decision that Walter Sterling was not denied a speedy trial is justified when these factors are balanced.

A. *Length of Delay.*

The defendant was unavailable to the Washington authorities prior to May of 1974, this being the first time since Sterling's escape that notice of his whereabouts was received in Washington. More than 2 years elapsed between the notice and the defendant's subsequent arrest in Washington. Unless this 2-year delay "is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo, supra* at 530-31.

A delay of 2 years between verdict and sentencing must be considered presumptively prejudicial if the concepts behind the speedy trial rule are to be realized, but this does not mean that prejudice has been shown. The length of the delay should play only a part in the balancing process when the defendant has been convicted. This is so since "[a] presumptive prejudice from an inordinate delay in bringing a man to trial does not present the same question as prejudice after conviction because the concerns of defendants in such positions are so entirely different." *Erbe v. State, supra* at 549. In *Erbe* a 5-year delay was held to be insufficient to vacate the sentence imposed.

B. *Reasons for Delay.*

The record indicates no bad faith on the State's part. The State was apparently negligent in the handling of its response to the California officials' inquiry, but such nonfeasance weighs less heavily against the State than purposefulness. *Barker v. Wingo, supra* at 645. As such, the State's inaction plays an almost neutral role in the balancing process.

C. *Defendant's Assertion of His Right.*

Although a defendant has no obligation to bring himself to trial, he does bear some responsibility in asserting his right. It has been emphasized that the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo, supra* at 532. Contrary to the defendant's claim, the record reveals no attempt on his part to obtain extradition in order to be sentenced. Rather, the teletype message contains a vague reference to the fact that a Walter Sterling wanted to make "A DEMAND FOR TRIAL ON YOUR CHARGE." Common usage of the word "charge" indicates only that the defendant may have contemplated returning to Washington to face a charge of jumping bail. This does not amount to a demand that he be sentenced. This weighs against his claim that he has been denied due process.

D. *Prejudice.*

In determining whether a delay prejudiced the defendant, we find that the interests that the speedy trial rule was designed to protect have been protected. In an attempt to establish prejudice, the defendant maintains that the "possibility" of securing a Washington sentence concurrent with the California sentence was lost. While it is true that the defendant need not affirmatively prove prejudice in order to establish a denial of his constitutional right to a speedy trial, *Moore v. Arizona,* 414 U.S. 25, 26, 38 L. Ed. 2d 183, 94 S. Ct. 188 (1973), it is equally true that speculation or possibility is insufficient to show prejudice, *State v. Wieman,* 19 Wn. App. 641, 645, 577 P.2d 154 (1978). *See*

*also Alford v. State,* 155 Ind. App. 592, 294 N.E.2d 168 (1973).

We have balanced the factors pertaining to the reason for and the length of the delay, the failure of the defendant to seek sentencing, and the absence of prejudice to him. We cannot say, after our consideration of these factors, that the defendant was denied a speedy trial or prejudiced by the delay in his sentencing, which was caused primarily by the defendant himself. *Gonzales v. State,* 582 P.2d 630 (Alaska 1978).

The judgment is affirmed.

SWANSON and WILLIAMS, JJ., concur.