[No. 6136–1.   Division One.   May 21, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. DARRELL
JAMES CARPENTER, *Appellant.*

*Royal & Garrison* and *Robert A. Garrison,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William Fligeltaub, Deputy,* for respondent.

DORE, J.—Darrell James Carpenter appeals from a judgment and sentence entered on his plea of guilty to robbery while armed with a deadly weapon.

## ISSUES

ISSUE 1: Was Carpenter denied his constitutional right to a speedy trial?

ISSUE 2: Was he brought to trial within the time requirements set forth in RCW 9.100 entitled "Agreement on Detainers"?

ISSUE 3: Was he denied his right to speedy trial as defined in CrR 3.3?

## FACTS

Following a hearing on Carpenter's motion to dismiss, the trial court entered the following findings of fact:

1

[O]n September 25, 1974, the defendant was charged by amended information with the crimes of robbery, attempted rape and taking and riding in a motor vehicle without permission of owner, . . . An arrest warrant was issued and bail was set for $25,000 on the same date.

2

[B]etween September 25, 1974 and September 12, 1975, the defendant's whereabouts were unknown.

3

[O]n September 12, 1975, the Office of the King County Prosecuting Attorney learned from John Bix of the Public Defender's Office in Minneapolis, Minnesota that the defendant had been arrested for new offenses there . . .

5

[A]fter the King County Prosecutor indicated an intent to extradite the defendant on September 20, 1975, Minnesota authorities notified the Prosecutor of failures to comply with the Minnesota extradition statute and suggested how the failures could be corrected.

6

[T]he King County Prosecutor was apprised contemporaneously of the defendant's plea of guilty to one count of forgery on September 22, 1975 and of the defendant's sentence on October 15, 1975 for the forgery offense and a prior parole violation.

7

[O]n November 19, 1975 the King County Prosecutor [was advised] that the defendant had been committed to the Minnesota State Prison and [was informed] that any further correspondence about the "detainer" should be sent to the warden.

8

[O]n July 7, 1976 a caseworker with the Minnesota State Prison informed the King County Prosecutor that the defendant's request for a minimum security farm was being held up because of the charges pending in King County.

9

[O]n December 29, 1976 the King County Prosecutor learned from a caseworker at the Minnesota State Prison that the defendant might be paroled as soon as January 4, 1977.

10

[O]n December 30, 1976 the King County Prosecutor placed a detainer on the defendant, who on the same day signed an agreement on detainer's form and thereby requested final disposition of the pending charges in King County pursuant to the Agreement on Detainers Act, RCW 9.100.

12

[T]he King County Prosecutor's decision not to effect a detainer on the defendant prior to December 30, 1976 was founded on the substantial financial cost in sending two law enforcement officials to bring the defendant back to Washington for trial, then to return him to Minnesota to satisfy his prison term there, and thereafter to bring him back to Washington to serve whatever term might have resulted from the earlier conviction in Washington. The prosecuting attorney considered the aforementioned transportation expenses and the likelihood of a brief incarceration for the defendant in Minnesota significant factors in deciding not to take steps to return the defendant to Washington until he had been paroled.

14

[O]n May 13, 1977 the defendant was paroled subject *inter alia* to the King County "detainer."

15

[O]n May 17, 1977 the defendant was arraigned on the charges in King County and entered a plea of not guilty.

16

[O]n June 15, 1977 an omnibus hearing was held at which time the defendant requested and obtained a continuance from the original trial date of July 7, 1977 to September 7, 1977.

17

[T]here is no showing of a deliberate attempt by the King County Prosecutor to avoid the Agreement on Detainers Act in order to subvert the defendant's constitutional right to a speedy trial.

[T]here is no evidence to indicate that the defendant ever made any kind of an assertion of his right to a speedy trial prior to December 30, 1976 other than the phone call on September 12, 1975 from John Bix of the Public Defender's Office in Minneapolis, Minnesota.

## DECISION

### ISSUE 1.

▆ Carpenter first contends that he was denied his constitutional right to a speedy trial. We disagree. In *Barker v. Wingo,* 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), the court adopted a balancing test to determine whether a defendant has been denied his constitutional right to a speedy trial.

[T]he Supreme Court rejected the principle that a defendant who fails to demand a speedy trial forever waives the right. A defendant's assertion of or failure to assert his right to a speedy trial is a factor to be considered in an inquiry into the deprivation of the right. Other factors recognized by the court in *Barker v. Wingo* [407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972)], are: (1) length of delay, (2) reason for delay, and (3) prejudice to the defendant. The balancing test involves the exercise of judicial discretion by the trial court including due consideration of any applicable procedural rules.

*State v. Breaux,* 20 Wn. App. 41, 45, 578 P.2d 888 (1978). *Accord, State v. Christensen,* 75 Wn.2d 678, 453 P.2d 644 (1969). In conclusion of law No. 2, the trial court explicitly stated that in determining whether Carpenter's constitutional right to a speedy trial was violated, numerous factors must be balanced, including the length of the delay, the reasons for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to him as a result of the delay. The court concluded "that the balancing of the factors . . . shows no violation of the defendant's constitutional right to a speedy trial." Conclusion of law No. 2.

▆ Although we have a constitutional duty to make an independent examination of the record to determine whether a fundamental constitutional right has been denied, *State v. Breaux, supra,* we find no violation here.

The delay between September 12, 1975, and June 15, 1977, when Carpenter requested and obtained a continuance of the trial, although significant, did not in and of itself demonstrate prejudice. Carpenter has not demonstrated that he was in fact prejudiced in his ability to prepare for trial. The State's justification in not seeking Carpenter's presence for trial because of the substantial financial cost and the likelihood of a short incarceration in Minnesota cannot be considered unreasonable. In independently reviewing the record, we do not find that the trial court abused its discretion.

ISSUE 2.

■ Carpenter next contends that he was not timely tried pursuant to RCW 9.100, the "Agreement on Detainers." We reject this argument. As was stated in *McQueary v. State,* 21 Wn. App. 658, 660–61, 585 P.2d 1197 (1978):

> RCW 9.100.010 *et seq.* embodies a contract among several states, . . . called the Agreement on Detainers. It is the purpose of the agreement to encourage the expeditious and orderly disposition of outstanding charges against a prisoner incarcerated in other jurisdictions and to assist them in securing speedy trial. It provides that whenever a person has *entered upon a term of imprisonment* in the holding state and whenever during the continuance of the term of that imprisonment, there is pending in the demanding state any untried indictment on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have cause to be delivered to the prosecuting officer and the appropriate court of the demanding jurisdiction written notice of the place of his imprisonment and his request for final disposition to be made of the indictment, information, or complaint. By making a request for trial in the demanding state, the prisoner waives extradition. The act also provides that for good cause shown in open court the prisoner, with his counsel being present, the court having jurisdiction in the matter may grant any necessary or reasonable continuance.

*Accord, State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978). Either the State or the prisoner may invoke the provisions of the agreement, but the time requirements

apply only after the prisoner requests that final disposition of his case be made in the demanding state. *See United States v. Dowl,* 394 F. Supp. 1250 (D. Minn. 1975); *United States v. Cappucci,* 342 F. Supp. 790 (E.D. Pa. 1972).

Here, Carpenter demanded final disposition of his charges on December 30, 1976. He was arraigned on May 17, 1977, and on June 15, 1977, he requested a continuance of the original trial date of July 7, 1977. A new trial date was set for September 7, 1977. Any delay after the request for a continuance is attributable to Carpenter and is not included in determining whether he was timely brought to trial. Because fewer than 180 days had passed between Carpenter's request for a final disposition on December 30, 1976, and his request for continuance on June 15, 1977, we find no violation of RCW 9.100.010.

ISSUE 3.

██ ██ Carpenter's final contention is that he was denied his right to a speedy trial defined in CrR 3.3. We reject this contention. Even if we were to agree with Carpenter that the time limits in CrR 3.3 began to run on September 25, 1974, when the information was filed, Carpenter must be considered "absent and thereby unavailable" under CrR 3.3(f) (amended by the Supreme Court November 17, 1978). A defendant is considered "absent" when his whereabouts are unknown and cannot be determined by due diligence. *State v. Williams,* 87 Wn.2d 916, 557 P.2d 1311 (1976); *State v. Hattori,* 19 Wn. App. 74, 573 P.2d 829 (1978). A defendant must not be considered "unavailable"

> if his whereabouts are known and reasonable efforts are not taken to obtain his presence in the county wherein the charges are pending. If the State fails to exercise reasonable efforts in obtaining the defendant's presence, the time periods shall not "accrue anew" within the meaning of CrR 3.3(f). In determining whether the State has acted reasonably, the time necessary for transporting the defendant back to this state and administrative delays caused by the foreign jurisdiction, as well as whether the defendant waives extradition, are important factors to be considered.

*State v. Hattori, supra* at 79. *Accord, State v. Peterson, supra.* Here, Carpenter was *absent* until September 12, 1975, when the State learned that he had been arrested in Minnesota. Thereafter, the State acted reasonably in not seeking his presence in Washington and, therefore, he was *unavailable.* Since he was "absent and thereby unavailable," his right to a speedy trial accrued anew upon his presence in King County on May 17, 1977. CrR 3.3(f).

Affirmed.

SWANSON and ANDERSEN, JJ., concur.

Reconsideration denied June 26, 1979.

Review denied by Supreme Court October 29, 1979.